**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

GEORGE JUNIOR GREEN, #264458,

      Petitioner,

v.                                                       ACTION NO.
                                                                 2:08cv506

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

      Respondent.

**UNITED STATES MAGISTRATE JUDGE'S**
**SUPPLEMENTAL REPORT AND RECOMMENDATION**

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. §2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

**I. SUPPLEMENTAL STATEMENT OF THE CASE**

Petitioner George Junior Green ("Green") filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 27, 2008. [Doc. 1.]  On May 28, 2009, the Undersigned issued a Report and Recommendation ("First Report" [Doc. 10]), which recommended that Green's petition be GRANTED and that Green receive a resentencing hearing on his current convictions. On June 8, 2009, Respondent moved to expand the record [Doc. 11], moved for reconsideration [Doc. 12], and moved for summary judgment [Doc. 13].  Additionally, Respondent filed a memorandum in support of all three motions ("Supplemental Brief" [Doc. 14]), with exhibits, including: (1) an affidavit from Kathy Fleming, the current Records Manager at the Red Onion State

Prison ("Fleming Affidavit"); and (2) an internal memorandum from the Virginia Department of Corrections ("VDOC"), entitled "Legal Update," which documents the vacation of Green's felony murder and firearm convictions in February 2003. Also, Respondent filed an Objection to the Report and Recommendation ("Objection" [Doc. 15]).[1] Finally, Green filed a Response in opposition to all three motions and the Objection. [Doc. 17.] All three motions are ripe for adjudication.

## II. MOTIONS

Respondent moves this Court to (1) "grant summary judgment in the . . . case" [Doc. 13]; (2) expand the record to include the Fleming Affidavit [Doc. 11]; and (3) reconsider the findings set forth in the First Report [Doc. 12].

First, the motion for summary judgment is superfluous. In response to Green's habeas petition, an answer[2], a motion to dismiss,[3] and a motion for summary judgment seek to obtain the same result–denial of the petition. With respect to the grant or denial of a habeas petition, Respondent has not identified, nor can this Court find, any controlling precedent to require a deviation from the standard of review under 28 U.S.C. § 2254(d)(1)-(2). As a result, Respondent's Motion for Summary Judgment is DENIED.[4]

---

[1] The Objection to the Report and Recommendation [Doc. 15] is identical to the Supplemental Brief [Doc. 14], except that the Objection does not include the exhibits.

[2] Respondent has already filed an answer. [Doc. 4.]

[3] Respondent has already filed a motion to dismiss. [Doc. 3.]

[4] It should be noted that Respondent does not request the Court to enter summary judgment in favor of either party. Also, in this particular case, by denying the motion, the Undersigned has not ruled on a dispositive motion. Rather, in the habeas context, the end result must be either a grant, or denial, of the petition. Summary judgment is foreign to the procedural structure under Section 2254.

Second, Respondent moves for an expansion of the record "based on the excusable neglect of counsel" (Resp.'s Supp. Br. at 2), but neither the motion nor the Supplemental Brief explains why the neglect to create a complete record was "excusable." Instead, Respondent argues that "[i]t appears that counsel, in good faith, filed documents that did not address the concerns of this Court."[5] Id. This blanket justification, without more, is not sufficient to entitle a party to supplement the record after the Court has filed its Report. Newly discovered evidence, for example, can merit an expansion under certain circumstances. In this case, however, there is no indication that Kathy Fleming's testimony was undiscoverable at the time Respondent filed its Answer [Doc. 4] and Motion to Dismiss [Doc. 3]. More importantly, Fleming's testimony is not appropriate for the Court's consideration, for lack of personal knowledge. Fleming does not state that she was the Records Manager at the Red Onion State Prison during the relevant period, May 15, 2002 through February 26, 2003. Furthermore, she states:

> *I have been informed* that the [VDOC] Court and Legal Services Section generated a Legal Update for offender Green dated February 24, 2003. Green *would have* received this Update at Red Onion on February 24, 2003.

(Flem. Aff. at ¶ 4)(emphasis added). The affiant's lack of personal knowledge that Green in fact received notice that his sentence had been recalculated by VDOC, coupled with the lack of a valid excuse for the affidavit's late submission, compels this Court to DENY Respondent's Motion to Expand Record.

---

[5] On March 27, 2009, the Court ordered Respondent to produce the following: "(1) the court order, if any, that reduced Petitioner's prison sentence from 65 years to 37 years; (2) record from the Virginia Department of Corrections documenting the sentence reduction pursuant to court order or administrative action; (3) date and manner by which Petitioner was notified of his sentence reduction; and (4) date and manner by which Petitioner was notified that he would not be retried on the murder charge and related firearm charge." [Doc. 8.] On April 13, 2009, Respondent filed new documents in response to the Order. [Doc. 9.]

Third, Respondent "moves the Court to reconsider its findings in the Report and Recommendation." (Mo. for Reconsid. at 1.) The Court GRANTS the motion, in part, and DENIES the motion, in part, as follows:

(a) the Court will not reconsider the findings of fact in the original Report, for the reasons stated in the denial of the Motion to Expand Record.

(b) in the interest of providing clarity, however, the Court will address several of the new legal arguments raised by Respondent in the Supplemental Brief.

### III. COURT'S RESPONSE TO NEW LEGAL ARGUMENTS

**A. The Petition Is Not "Second or Successive"**

As the First Report explains in more detail, under the abuse of the writ doctrine, "a claim which did not arise until after a prior petition was filed would not be barred as 'second or successive'. . . ." In re Taylor, 171 F.3d 185, 187 (4th Cir. 1999) In Taylor, the prisoner filed a motion under 28 U.S.C. § 2255 that achieved the reversal of several firearms convictions, and after the resentencing on the remaining conspiracy conviction, the prisoner filed another motion under § 2255 to challenge the new sentence. The Fourth Circuit held that the second motion was not successive within the meaning of the AEDPA,[6] "because Taylor expressly seeks to raise only those issues that originated at the time of his resentencing. . . ." Id. at 187-88. Under Taylor, Green's latest habeas petition is not "second or successive." Even if the Court adopts Respondent's interpretation of the VDOC's internal memos,[7] the earliest that Green could have learned of the recalculation of his sentence would have been February 21, 2003. (Resp.'s Response to Order, Ex.

---

[6] "AEDPA" stands for the Antiterrorism and Effective Death Penalty Act of 1996.

[7] To the contrary, the Court actually rejects Respondent's position that the VDOC internal memos gave Green notice of the sentence recalculation. See Report at 7-8.

4

2.) Green's first petition, however, was filed on February 4, 2003. Thus, in his latest petition, Green raises an issue that did not arise until after he filed his first petition. As a result, Green's present petition is not "second or successive," and should not be dismissed for lack of express authorization from the Court of Appeals. Id.; James v. Walsh, 308 F.3d 162, 168 (2d Cir. 2002)(conducting a survey of the U.S. Courts of Appeal); Walker v. Roth, 133 F.3d 454, 455 (7th Cir. 1997)(holding "that a second habeas petition attacking for the first time the constitutionality of a newly imposed sentence is not a second or successive petition within the meaning of § 2244").

Respondent now argues that Green was obligated, as a matter of law, to amend his first habeas petition to include the sentencing issue. This argument fails for two reasons. First, after a careful review of the record, the Undersigned did not find *evidence* of Green's knowledge of the sentence recalculation until August 10, 2007. (Report at 7-9.) Thus, even if Green's first petition was pending in this Court until December 10, 2003 (Resp.'s Supp. Br. at 4), Green did not have the requisite knowledge to amend that petition. Second, Respondent cites no case law to support its assertion that Green was under a duty, as a matter of law, to amend his petition or else lose the right to bring the sentencing claim at a later date. Therefore, Respondent's position is not persuasive, and the Court reiterates its finding that Green's petition is not "second or successive" within the meaning of the AEDPA.

**B. The Petition Does Not Violate the Statute of Limitations**

Under the relevant subsection of 28 U.S.C. § 2254, the 1-year statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). Respondent continues to argue that the circuit court order of February 12, 2003, which vacated Green's convictions for

murder and use of a firearm, provided Green with actual knowledge of the sentence recalculation. The circuit court order, however, does not contain a single reference to a sentence reduction. Instead, the court order notified Green that he would receive a new trial, which never happened. Thus, this Court cannot impute notice of the sentence recalculation to Green based on the circuit court's order of February 12, 2003.

Next, Respondent argues that "[u]nder Virginia law and practice, when some number of convictions are set aside, no 'resentencing order' or 'recomputation of sentences order' is entered." (Resp.'s Supp. Br. at 6.) But again, Respondent fails to cite any authority to support whether this assertion is true, and more importantly, how it is relevant to the issue of Green's knowledge. Respondent then describes how the VDOC "deletes the vacated sentences, recomputes for its purposes the remaining sentences the prisoner has to serve, and provides the prisoner with a copy of that recomputation." Id. (citing Flem. Aff.). As explained in the Court's denial of the Motion to Expand Record, however, the Fleming Affidavit does not establish that Fleming had personal knowledge that such a memo arrived in the hands of Green. As a result, the Court will not consider the affidavit, and accordingly, Respondent's reliance on the internal VDOC memo is misplaced.

Due to the absence of evidence in the record to prove that the courts or VDOC informed Green of his sentence recalculation, the Court "construe[d] ambiguous facts in favor of Green" to determine that the statute of limitations began running on August 10, 2007, subject to tolling. Respondent contends that the Court erred in liberally construing the facts. Specifically, Respondent claims that such a liberal construal is not "the appropriate legal standard" (Resp.'s Supp. Br. at 7), but fails to cite any case law to support the challenge. To the contrary:

> It is well established that the standards governing the sufficiency of habeas corpus petitions are less stringent when the petition is drafted *pro se* and without the aid of

6

>counsel. . . . Hence, not only are the allegations of *such petitions to be construed more liberally*, . . . but unincluded allegations of "apparent" facts may be treated as part of the complaint for the purpose of determining whether an issue should be remanded for further investigation.

Williams v. Griswald, 743 F.2d 1533, 1542-43 (11th Cir. 1984)(emphasis added)(citing Haines v. Kerner, 404 U.S. 519 (1972)); see also, e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)(applying the rule of liberal construal in the context of 28 U.S.C. § 2255); Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983)(recognizing that "due to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed."); Mays v. Balkcom, 631 F.2d 48, 51 (5th Cir. 1980)("This court realizes that a pro se petition filed by a prisoner should be examined more liberally than one drawn up by an attorney."). In light of the foregoing authority, the Court renews its pledge to construe ambiguous facts, or lack of facts, in favor of Green.

Accordingly, the Court cannot impute knowledge to Green before August 10, 2007. Furthermore, as explained in the First Report, the state court's blatant mistreatment of Green's state habeas petition invokes sufficient tolling of the statute of limitations to preserve the timeliness of Green's federal petition. (Report at 9-11.)

### C. Green's Petition Is Not Procedurally Defaulted

A petitioner's federal habeas claim is procedurally defaulted when "a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and *adequate* ground for the dismissal. . . ." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991))(emphasis added). The adequacy of the state procedural ground, however, "is itself a federal question." Lee v. Kemna, 534 U.S. 362, 375 (2002)(internal quotations omitted). In particular,

there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Id. at 376.

Respondent argues that "it is not the province of a federal habeas court to reexamine" the state court's blatant mistreatment of Green's state habeas petition. In an effort to support this argument, however, Respondent cites case law that either (1) is inapposite to the present case,[8] or (2) is presented in misleading fashion.[9] (Resp.'s Supp. Br. at 8.) Instead, the Court would draw the parties' attention to the case of Smallwood v. Young, 425 F. Supp. 2d 717 (E.D. Va. 2006). In

---

[8] The cited portion of Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), addressing the *merits* of a habeas petition, held that the admission of evidence in violation of state law is not relevant to the issue of whether the petitioner's federal due process rights were violated. In contrast, Green's due process claim is not predicated on a violation of state law, but rather, the claim alleges a violation of the U.S. Constitution, based on standards created by the U.S. Supreme Court in U.S. v. Tucker, 404 U.S. 443 (1972). The state court's application of a state statute of limitations to Green's petition implicates the issue of procedural default, not the merits of the claim. Therefore, the appropriate standard of review is dictated by Lee v. Kemna, 534 U.S. 362 (2002), not Estelle. Under Kemna, in order to find procedural default, a state procedural ground must be "adequate," which "is itself a federal question." 534 U.S. at 375. In the First Report, the Undersigned held that the state court's application of the state statute of limitations was not "adequate." (Report at 13-14.) The remainder of the cases cited by Respondent address habeas claims based on violations of state law, and state court interpretations of state law applied to the *merits* of the claims. (Resp.'s Supp. Br. at 8, ¶ 15.) These cases are, with one exception, inapposite to determining whether Green has procedurally defaulted his habeas claims. The exception is Thomas v. Davis, 192 F.3d 445, 450-54 (4th Cir. 1990). In Thomas, the Fourth Circuit held that the state procedural rule at issue was "not adequate," and as a result, found that the petitioner's federal habeas claim was not procedurally defaulted. Thus, the cited authority actually undermines Respondent's position.

[9] Respondent quotes the following passage from Estelle, 502 U.S. at 68: "In conducting habeas review, a federal court is limited to deciding whether a **conviction** violated the Constitution, laws, or treaties of the United States." (Resp.'s Supp. Br. at 8.) Respondent puts emphasis on the word, "conviction," presumably to suggest that habeas relief under Section 2254 is limited to addressing a state conviction, rather than a state court determination of a petition's timeliness. The passage quoted from the Estelle decision, however, read within the context of its paragraph, did not intend to emphasize "conviction," but rather, highlighted that a petitioner must show a violation of *federal* law, not an "error[] of state law." Id. at 67-68.

Smallwood, this Court considered whether a state prisoner's habeas petition was procedurally defaulted from federal review after the Supreme Court of Virginia had dismissed the state petition for failure to file a timely notice of appeal. The prisoner asserted that he had in fact mailed the notice of appeal, but the courthouse had no record of receipt, and the Supreme Court of Virginia held that the absence of the filing violated Rule 5:9.[10] When the prisoner filed his federal petition, this Court evaluated, pursuant to Kemna, whether the state court's application of the state procedural rule was adequate to bar federal habeas review:

> For these reasons, to the extent that the Supreme Court of Virginia's ruling that Smallwood failed to comply with Rule 5:9 was premised on its conclusion that Smallwood failed to prove that his May 4, 2004 mailing contained a notice of appeal, this conclusion is "without any fair or substantial support" in the record. . . . Accordingly, Smallwood's alleged non-compliance with this aspect of [the state procedural rule] is inadequate to bar federal habeas review.

Smallwood, 425 F. Supp. 2d at 726. Similarly, Green's state petition was dismissed for alleged non-compliance with the state procedural rules, and as explained in the First Report, the application of the procedural rules was "fundamentally flawed" (Report at 13), "patently unfair" (Report at 14), and thus, "an exorbitant application of generally sound rules" (Report at 14, quoting Kemna, 534 U.S. at 376). Under Kemna and Smallwood, therefore, the procedural dismissal of Green's state petition is "inadequate" to bar federal review. There is no procedural default in this case.

---

[10] Rule 5:9 of the Rules of the Supreme Court of Virginia provides that no appeal shall be allowed unless the appellant files a notice of appeal with the clerk of the trial court within 30 days of final judgment.

9

**D. Petition Succeeds on the Merits**

As a preliminary matter, the Court notes that Respondent failed to address the merits of Green's petition before the filing of the First Report. The Court is concerned that the government treated the Report and Recommendation stage as a "dry run." In other words, Respondent relied on procedural grounds for denial of the petition, even though the facts did not conclusively demonstrate that the petition was procedurally barred. The most likely explanations for the failure to brief the merits of Green's petition are: (1) the government firmly believed that the procedural grounds for dismissal were unassailable; and (2) the relative "cost" (in terms of effort) of briefing the merits did not outweigh the "benefit," because in the event that the Undersigned rejects the procedural grounds, the government can simply introduce new legal argument to the U.S. District Judge for *de novo* review. If the former, then the Court would strongly encourage the government to take a more liberal approach to briefing "in the alternative." If the latter, then judicial resources suffer. Either way, the Court will address Respondent's new arguments after briefly summarizing the position adopted by the First Report.

In the First Report, the Undersigned recommended granting the petition, because Green was deprived of his right to due process when the VDOC recalculated his sentence without a resentencing hearing in trial court. (Report at 14-17.) Under U.S. Supreme Court precedent, trial court sentences do not pass constitutional muster if the "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." U.S. v. Tucker, 404 U.S. 443, 447 (1972)(quoting Townsend v. Burke, 334 U.S. 736, 741 (1948)). In Tucker, a federal district court had convicted the defendant of bank robbery and relied on three prior state felony convictions to sentence the defendant to the statutory maximum. Several years later, in collateral

proceedings, a state court conclusively determined that two of the state felony convictions were unconstitutional. As a result, the Supreme Court remanded for a new hearing on the bank robbery sentence, highlighting that "if the trial judge . . . had been aware of the constitutional informity of two of the previous convictions, the factual circumstances of [Tucker's] background would have appeared in a dramatically different light at the sentencing proceeding." Id. at 448. Under Tucker,[11] therefore, if the original trial court judge bases a sentence, at least in part, on a prior conviction, and the prior conviction is later held to be unconstitutional, then Due Process entitles the prisoner to a new hearing on his sentence.

In the present case, Green's sentencing on the valid convictions was inextricably intertwined with the sentencing for his unconstitutional convictions. The trial court judge was not aware, at the time of sentencing, that Green's felony murder conviction and related firearm conviction were constitutionally invalid. Furthermore, the judge stated, "I think it certainly is understandable why [the sentence] exceeds the guidelines under the seriousness and the aggravated facts in this case." (October 13, 1998, Tr., Sentencing Hrg., at 12-13.) In rendering a sentence in excess of the guidelines, the judge adopted the jury's sentences for each of the convictions, and despite defense counsel's request, ordered that each sentence run consecutively. Id. at 11-14. Therefore, the felony murder conviction, embodying the most "serious" and "aggravated" facts elicited at Green's trial, likely affected the manner in which the judge sentenced Green for all the convictions.

Respondent argues that the jury and trial court judge sentenced Green to the statutory *minimum* on 8 of the 9 convictions, but fails to explain how the judge, and both lawyers, viewed the

---

[11] As pointed out by Respondent, references to "Turner" in the First Report were intended to read as "Tucker."

sentence as *exceeding* the high-end of the guidelines. Id. at 9 (prosecutor asking judge "not to disturb the jury recommendation . . . and to disregard the guidelines because the evidence would demand it"); id. at 11 (defense counsel requesting that judge modify the jury's sentence, because it was in excess of the guideline sentencing range); id. at 12-13 (trial judge stating, "I think it certainly is understandable why [the jury's sentence] exceeds the guidelines . . . ."). Either way, the sentence's length in relation to statute and guidelines is not dispositive of the constitutional inquiry under Tucker.[12] Instead, the rule focuses on the trial court's "basis of assumptions" at sentencing. Tucker, 404 U.S at 447. Restated, if the court considered an unconstitutional conviction while sentencing on the remaining valid convictions, then due process requires a new sentencing hearing on the valid convictions. Id. at 448-49. As explained above, the trial court considered the felony murder and firearm convictions, and their "serious" and "aggravated" facts, while sentencing on the remaining valid convictions.

Respondent attempts to distinguish Tucker by limiting its application to instances where a trial court bases a sentence on a *prior* conviction, and that *prior* conviction is later held unconstitutional. As explained in the First Report, however, the Tucker rule can, and should, be applied in the context of simultaneous sentencing. (Report at 15-16.) Specifically, the Second Circuit has decided that the Tucker rule extends to cases, like Green's, where all relevant convictions take place in a single trial. McGee v. U.S., 462 F.2d 243 (2d Cir. 1972). Judge Friendly relied on Tucker to hold:

When the invalidity of the conviction on one count which may have influenced the

---

[12] Respondent provides no support for its bold assertion that "[a]s the jury did not impose the maximum sentence on the remaining charge, Green has failed to establish that sentence constituted a due process violation." (Resp.'s Supp. Br. at 10.)

> sentence becomes apparent on an appeal, whether on direct or collateral attack, the proper course is usually to vacate the sentences and remand for resentencing on the valid counts without consideration of the invalid one.

Id. at 246. Respondent ignores the McGee decision, and provides no case law to support a contrary position. Thus, Respondent's attempt to distinguish Tucker on grounds of procedural posture is not persuasive.

Next, Respondent argues that the Tucker rule only applies in the context of "uncounseled convictions." (Resp.'s Supp. Br. at 11-12.) In other words, if a trial court judge bases a sentence on a separate conviction, but that conviction was later held unconstitutional on some ground *other than a failure to appoint counsel*, then the sentence is insulated from due process review. Respondent bases this argument on selected quotations from Custis v. United States, 511 U.S. 485 (1994), but Respondent's reliance on the Custis decision is misplaced. In Custis, the Supreme Court addressed whether a defendant, *at the sentencing stage*, has a right to collaterally attack prior convictions used to enhance his sentence. The Court held that, *at the sentencing stage*, the right to collaterally attack prior convictions, on any ground other than failure to appoint counsel, does not exist. Id. at 497. From a logistical standpoint, these collateral attacks–aside from those based on a failure to appoint counsel–"would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States." Id. at 496. Instead, such "rummaging" is the province of habeas review. In fact, the Court concluded:

> We therefore hold that § 924(e) does not permit Custis to use the federal sentencing forum to gain review of his state convictions. Congress did not prescribe and the Constitution does not require such delay and protraction of the federal sentencing process. We recognize, however, as did the Court of Appeals, . . . that Custis, who was still "in custody" for purposes of his state convictions at the time of his federal sentencing under § 924(e), may attack his state sentences in Maryland or through

13

>federal habeas review. . . . *If Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences.* We express no opinion on the appropriate disposition of such an application.

Id. at 497. Thus, the Custis holding actually supports Green's position. Green did, in fact, collaterally attack his convictions through habeas review, and in 2002, the Supreme Court of Virginia vacated the felony murder and firearm convictions as unconstitutional. Now, as suggested by the Court in Custis, Green has "applied"[13] through habeas review to "reopen" his sentencing with a new hearing.

Finally, Respondent notes that Green's possible escalation in sentence upon rehearing "would be an odd remedy for a purported due process violation." (Resp.'s Supp. Br. at 12-13.) Green may obtain a reduced sentence, however, if some of the counts are allowed to run concurrently. Furthermore, the beauty of a remedy is in the eye of its petitioner. If Green wishes to use his constitutional rights to buy in at the roulette table, this Court assumes no responsibility for the spin of the wheel. The Court can only proceed as far as the law allows–in this case, that under the Due Process Clause of the U.S. Constitution, Green is entitled to a new sentencing hearing on his valid convictions.

---

[13] Under AEDPA, an "application" is substantively equivalent to a "petition," in the context of seeking habeas relief. Even though Custis was decided two years prior to the *enactment* of AEDPA, the opinion's use of the words "apply" and "application" likely invokes the post-AEDPA meaning.

## IV. **RECOMMENDATION**

For the foregoing reasons, the Court reiterates its recommendation that Respondent's Motion to Dismiss be DENIED, and Petitioner's Writ of Habeas Corpus be GRANTED to the extent that the Court vacate Green's sentence and order the Circuit Court for the City of Petersburg to resentence Green on the valid convictions, *as prescribed by Virginia law*. It is further recommended that Green remain in custody of the VDOC until his resentencing, but if the Circuit Court fails to resentence Green within 120 days of this Court's final judgment order, that Green be released from custody at the end of the 120 days.

## V. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

                                                                                   /s/
                                                           Tommy E. Miller
Norfolk, Virginia                             United States Magistrate Judge
June 29, 2009

## **CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

George Junior Green, #264458
Wallens Ridge State Prison
P.O. Box 759
Big Stone Gap, VA 24219-0500


Craig W. Stallard, Esq.
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

               Fernando Galindo, Clerk


            By _____
              Deputy Clerk

              June  , 2009